**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos J. Bustamante,<br><br>Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Commissioner of the Social Security Administration,<br><br>Defendant. | No. CV-13-02080-PHX-ESW<br><br>**ORDER** |

      Pending before the Court is Plaintiff Carlos Jesus Bustamante III's appeal of the Social Security Administration's ("Social Security") denial of his claim for disability insurance benefits. Plaintiff filed his Title II Social Security Disability Insurance application on July 2, 2010, alleging disability beginning September 1, 2008. This Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. § 405(g). Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction.[1] (Doc. 12). After reviewing the Administrative Record ("A.R."), Plaintiff's Opening Brief (Doc.

---

[1] This case was reassigned to Hon. Eileen S. Willett on November 14, 2014.

15)[2], and Defendant's Response Brief (Doc. 16),[3] the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free of harmful legal error. The decision is therefore affirmed.

## I. LEGAL STANDARDS

### A. Disability Analysis: Five-Step Evaluation

The Social Security Act provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). To be eligible for benefits, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

To decide if a claimant is entitled to benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. § 404.1520(a). The claimant has the burden of proof regarding the first four steps:[4]

> **Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to step two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to step three.

---

[2] Cited herein as "Pl. Br. at __"

[3] Plaintiff did not file a Reply brief.

[4] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

**Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. § 404.1520(e). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[5]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. § 404.1520(f). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience. *Id*.

**B.  Standard of Review Applicable to ALJ's Determination**

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

---

[5] *Parra*, 481 F.3d at 746.

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). This is because the ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court must also consider the harmless error doctrine when reviewing an ALJ's decision. This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II. PLAINTIFF'S APPEAL

### A. Procedural Background

Plaintiff, who was born in 1970, has many years of work experience in home building and project management. Plaintiff alleges that on September 1, 2008, he became unable to work due to the following ten impairments: (i) brittle diabetes, (ii) statutory blindness in the right eye, (iii) headaches impairment, (iv) depression, (v) glaucoma, (vi) multiple joint arthritis, (vii) hypertensive cardiovascular disorder, (viii), hypertension, (ix) sleep apnea, and (x) acid reflux.  (A.R. 74).

Plaintiff filed his initial application on July 2, 2010 (A.R. 155-58), which Social Security denied on October 15, 2010. (A.R. 100-02). Social Security denied Plaintiff's request for reconsideration on May 16, 2011. (A.R. 106-08). Thereafter, Plaintiff requested a hearing before an ALJ. The ALJ held a hearing on May 8, 2012, during which Plaintiff was represented by an attorney. (A.R. 40-70). In his June 18, 2012 decision, the ALJ found that Plaintiff is not disabled. (A.R. 19-32). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner. (A.R. 1-4). On October 11, 2013, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 405(g) requesting judicial review and reversal of the ALJ's decision.

### B. The ALJ's Application of the Five-Step Disability Analysis

The ALJ completed the first four steps of the analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

#### 1. Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 1, 2008, the alleged disability onset date. (A.R. 24). Neither party disputes this determination.

#### 2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that all of Plaintiff's alleged impairments were severe except for Plaintiff's alleged depression. (A.R. 24-26). As discussed below, Plaintiff argues that the ALJ erred in determining that Plaintiff's alleged depression is not severe.

#### 3. Step Three: Presence of Listed Impairment(s)

The ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations. (A.R. 27). Neither party disputes the ALJ's determination at this step.

### 4. Step Four: Capacity to Perform Past Relevant Work

The ALJ found that Plaintiff retained the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c), subject to several limitations. (A.R. 27). The ALJ found that Plaintiff can only occasionally climb ladders, ropes, scaffolds, ramps, and stairs, but can frequently balance, stoop, crouch, kneel, and crawl. *Id*. The ALJ also found that Plaintiff should avoid concentrated exposure to extreme heat and workplace hazards such as moving machinery and unprotected heights. *Id*. Finally, the ALJ found that Plaintiff is limited to occupations requiring no depth perception. *Id.*

In making the determination regarding Plaintiff's residual functional capacity, the ALJ rejected the opinion of family nurse practitioner Carol Stanford ("NP Stanford"), who assessed that Plaintiff is unable to work. (A.R. 30). The ALJ explained that NP Stanford is not an "acceptable medical source" under Social Security regulations and that her assessment is inconsistent with her own treatment notes and other credible opinion evidence. *Id*. The rejection of NP Stanford's opinion is a major part of Plaintiff's appeal, as discussed below. In addition, Plaintiff challenges the ALJ's rejection of Plaintiff's testimony regarding his subjective symptoms.

After determining Plaintiff's residual functional capacity, the ALJ found that Plaintiff is capable of performing past relevant work as a project manager and construction superintendent. (A.R. 31). The ALJ therefore concluded that Plaintiff has not been under a disability from September 1, 2008 through the date of the ALJ's decision (June 18, 2012). (A.R. 31-32). Plaintiff argues that the ALJ should not have determined that Plaintiff's work as a project manager constitutes "past relevant work."

### 5. Step Five: Capacity to Perform Other Work

The ALJ's analysis did not proceed to the fifth step as the ALJ found at step four that Plaintiff is not disabled.

### C. Analysis of Plaintiff's Appeal

#### 1. Plaintiff's Challenge to the ALJ's Analysis at Step Two: The ALJ Did Not Mischaracterize the Evidence in Determining that Plaintiff's Alleged Depression is Not Severe

Plaintiff argues that the ALJ erred at step two of the five-step analysis when the ALJ found that Plaintiff's alleged depression is non-severe.  For allegations regarding mental impairments, an ALJ must use the special review technique set forth in 20 C.F.R. § 404.1520a.  After determining whether an applicant has a medically determinable mental impairment, the ALJ must rate the degree of functional limitation for four areas: (i) activities of daily living, (ii) social functioning, (iii) concentration, persistence or pace, and (iv) episodes of decompensation.  *Id*. at §  404.1520a(c)(3).  Next, the ALJ must determine the severity of the mental impairment.  *Id*. at §  404.1520a(d).

If the degree of limitation in the first three functional areas is "none" or "mild" and "none" in the fourth area, it is generally concluded that the impairment is not severe unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities.  *Id*. at §  404.1520a(d)(1).  If the impairment is severe, the ALJ proceeds to step three of the five-step disability analysis to determine if the impairment meets or equals a specific listed mental disorder.  *Id.* at §  404.1520a(d)(2).  *Keyser v. Comm'r Soc. Sec. Admin*., 648 F.3d 721, 725 (9th Cir. 2011).

Here, the ALJ found that Plaintiff has depressive disorder.  (A.R. 24-25).  The ALJ then reviewed the evidence to determine if the depression is severe.  The ALJ noted that (i) Plaintiff has consistently denied suicidal or homicidal ideations and reportedly has a good social support system; (ii) a mental status examination found Plaintiff's mood relaxed and affect appropriate; (iii) Plaintiff has had no prior treatment for his condition; (iv) Plaintiff indicated at hearing that his symptoms have improved due to prescription medication; and (v) other records report that Plaintiff was "doing well."  (A.R. 25).  In addition, the ALJ cited a psychiatric consultative examination report prepared in 2009 by Dr. Sharon Steingard, D.O., who found that Plaintiff's understanding and memory were

grossly intact. (A.R. 372). The ALJ also cited medical consultant Nicole Lazorwitz's reports indicating that Plaintiff's depression has no significant work-related limitations. (A.R. 380-397). The ALJ found that the consistency of the opinions, in conjunction with the lack of treatment records, allowed him to afford the opinions great weight in considering the effect of Plaintiff's mental impairments on work-related functioning.

Based on the above considerations, the ALJ found that Plaintiff has no more than a "mild" limitation in any of the first three functional areas set forth in 20 C.F.R. § 404.1520a (daily living, social functioning, and concentration, persistence or pace). (A.R. 26). As to the fourth functional area (episodes of decompensation) the ALJ found that there was no evidence (e.g. psychiatric hospitalizations or intensive outpatient behavioral health treatment). *Id*. Due to the finding that Plaintiff's alleged depressive disorder does not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, the ALJ determined that it is not severe. *Id*.

Plaintiff challenges the ALJ's determination by arguing that the ALJ both misquoted and omitted findings from Dr. Steingard's 2009 report. Plaintiff argues that the ALJ mischaracterized Dr. Steingard's report by ignoring Dr. Steingard's statement that she expects Plaintiff to have "problems with complicated tasks and multitasking due to depression." (Pl. Br. at 13; A.R. 373). The ALJ, however, recognized such comment when the ALJ wrote that Dr. Steingard opined that Plaintiff "may have some limitations . . . due to continuing depression." (A.R. 25).

Plaintiff also argues that the ALJ ignored Dr. Steingard's statement that Plaintiff's "'tough exterior' . . . will likely limit him somewhat in dealing with the general public." (Pl. Br. at 13; A.R. 373). Although the ALJ's decision does not specifically use the phrase "tough exterior," it does note Dr. Steingard's finding of Plaintiff's limitations with social interaction. The ALJ's decision states that Dr. Steingard "further found that [Plaintiff's] social interaction was not precluded and only affected to a small degree by his depression, noting that although he described some problems with authority figures, he has previously maintained long-term employment." (A.R. 25). Further, the ALJ was

not required to specifically reference the "tough exterior" finding as it is not significant and an ALJ is "not required to discuss every piece of evidence." *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("[T]he ALJ is not required to discuss evidence that is neither significant nor probative.") (quoting *Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003)).

Plaintiff also contends that the ALJ's decision mischaracterizes the evidence where it states that Dr. Steingard "opined that [Plaintiff's] understanding and memory was grossly intact and that he would be able to maintain concentration satisfactorily, although he may have some limitations over the course of a full workday and workweek due to continuing depression." (Pl. Br. at 13; A.R. 25). Plaintiff argues that this mischaracterizes Dr. Steingard's report because (i) Dr. Steingard actually wrote that Plaintiff was "able to maintain concentration *over the course of the interview* without significant difficulty" (emphasis added) and (ii) Dr. Steingard's report does not predict whether Plaintiff would be able to maintain concentration satisfactorily in any other setting. (Pl. Br. at 13; A.R. 372).

Plaintiff, however, fails to mention that Dr. Steingard also indicates that Plaintiff scored 30 out of 30 on the Mini-Mental State Examination ("MMSE"), which Dr. Steingard states "does not suggest cognitive impairment." (A.R. 371). In addition, the Court does not overlook the fact that Dr. Steingard also does not predict whether Plaintiff would be *unable* to maintain concentration satisfactorily in any other setting. The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews*, 53 F.3d at 1039. Given Plaintiff's perfect score on the MMSE, a notation that Plaintiff was able to maintain concentration satisfactorily during the interview, and no statements indicating that Plaintiff would be unable to maintain concentration in other settings, the Court finds that the ALJ reasonably interpreted and did not mischaracterize Dr. Steingard's report.

### 2. Plaintiff's Challenges to the ALJ's Analysis at Step Four

#### i. The ALJ's Rejection of NP Stanford's Opinion is Supported by Substantial Evidence and is Free of Reversible Error

Before a claimant may be awarded disability benefits, there must be evidence from an "acceptable medical source" that establishes the existence of a medically determinable impairment. 20 C.F.R. § 404.1513(a). Only licensed physicians and certain other qualified specialists are considered "acceptable medical sources." *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Molina*, 674 F.3d at 1111); *see also* 20 C.F.R. § 404.1513(a). In order to reject the testimony of an acceptable medical source, the ALJ must provide specific and legitimate reasons that are based on substantial evidence in the record. *Molina*, 674 F.3d at 1111.

A source who is not an acceptable medical source is considered to be an "other source." 20 C.F.R. § 404.1513(d). Information from these "other sources" must still be considered even though the information cannot establish the existence of a medically determinable impairment. *Id*. In contrast to an opinion from an acceptable medical source, an opinion from an other source can be rejected as long as the ALJ provides "germane" reasons. *Ghanim*, 763 F.3d at 1161; *Molina,* 674 F.3d at 1111. Nurse practitioners and therapists are considered "other sources." *Ghanim*, 763 F.3d at 1161; 20 C.F.R. § 404.1513(d). Opinions from nurse practitioners therefore may be disregarded by an ALJ upon giving "germane" reasons. *Ghanim*, 763 F.3d at 1161.

Here, Plaintiff's treating nurse practitioner, NP Stanford, provided a Multiple Impairment Questionnaire dated November 7, 2011 (the "Impairment Questionnaire"), which was co-signed by Dr. Linda Brown. (A.R. 466-73). Plaintiff argues that the ALJ erred by treating the Impairment Questionnaire as an opinion from an "other source." Plaintiff contends that NP Stanford worked closely with and under the supervision of Dr. Brown and that the Impairment Questionnaire should therefore be treated as if it was from an acceptable medical source. To support this contention, Plaintiff cites *Taylor v. Comm'r of Soc. Sec. Admin*, 659 F.3d 1228 (9th Cir. 2011).

In *Taylor*, the Ninth Circuit held that a nurse practitioner's opinion was properly considered as part of the opinion of a doctor, an acceptable medical source. *Id*. at 1234. *Taylor* relies on *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996). In *Gomez,* the Court ruled that the nurse practitioner's opinion at issue should be considered an opinion of an acceptable medical source because the nurse practitioner had worked closely under the supervision of the physician, had consulted with the physician regarding the claimant's treatment numerous times, and was acting as an agent of the doctor. *Id*. at 971.

First, it is unclear whether *Taylor* and *Gomez* remain good law. In *Molina*, 674 F.3d at 1112 n.3, the Ninth Circuit noted that the regulatory section relied on in *Gomez* has since been repealed.[6] The Court, however, did not address its "continued vitality" because a physician did not supervise the nurse practitioner at issue. *Id.*

Assuming arguendo that *Taylor* and *Gomez* remain good law, the record is not clear as to whether NP Stanford worked closely under the supervision of Dr. Brown and was acting as an agent of Dr. Brown. The State of Arizona is one of almost 20 states that allow nurse practitioners to evaluate patients, diagnose, order and interpret diagnostic tests, initiate and manage treatments (including prescribe medications) without the supervision of a physician.[7] In Arizona, a nurse practitioner may "[i]dentify, develop, implement, and evaluate a plan of care for a patient to promote, maintain, and restore health." ARIZ. ADMIN. CODE § R4-19-508

Plaintiff has offered no evidence that (i) Dr. Brown closely supervised NP Stanford, (ii) NP Stanford regularly consulted with Dr. Brown, or (iii) NP Stanford otherwise had an agency relationship with Dr. Brown. Contrary to Plaintiff's assertion,

---

[6] The repealed regulation 20 C.F.R. § 416.913(a)(6) stated that a report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence, which the *Gomez* court interpreted as including a nurse practitioner-doctor team.

[7] Am. Assoc. of Nurse Practitioners, *State Practice Environment*, http://www.aanp.org/legislation-regulation/state-legislation-regulation/state-practice-environment.

- 11 -

the evidence in the record does not indicate that Plaintiff treated with NP Stanford and Dr. Brown "roughly the same number of times." (Pl. Br. at 10). All of the treatment records cited by Plaintiff clearly states "Provider: Carol Stanford, FNP." (A.R. 446, 448, 554, 675, 677, 681, 685, 687). Although many of the reports were signed off by Dr. Brown, there is no indication that Dr. Brown conducted the examinations or that NP Stanford consulted with Dr. Brown regarding Plaintiff's treatment. The mere fact that Dr. Brown signed off on the Impairment Questionnaire and many of NP Stanford's examination reports does not prove that NP Stanford was acting as an agent of Dr. Brown.

There is, however, evidence in the record supporting that NP Stanford independently treated Plaintiff. Significantly, Plaintiff testified that he "mainly treat[s] with [NP Stanford]." (A.R. 53). NP Stanford's own words also suggest that she independently treated Plaintiff. In her November 9, 2011 letter, NP Stanford states that "Mr. Bustamante has been a patient of *mine* for several years" (emphasis added). (A.R. 282). The letter does not mention Dr. Brown and Dr. Brown did not co-sign it. In addition, Dr. Thomas J. McPhee wrote directly to NP Stanford in regards to Plaintiff's eye exam, suggesting that Dr. McPhee considered NP Stanford to be Plaintiff's primary treatment provider. (A.R. 525). Finally, Plaintiff chose to list NP Stanford as the provider on his Authorization for Release of Personal Health-Related Information, further strengthening Plaintiff's statement that he mainly treated with NP Stanford. (A.R. 552).

There is thus substantial evidence supporting the ALJ's determination that NP Stanford is an "other source" if *Taylor* and *Gomez* remain good law. The ALJ gave germane reasons for rejecting NP Stanford's opinion when he states that NP Stanford "cites no objective evidence to corroborate her opinion" and that her opinion is "inconsistent with her own treatment records as well as other credible opinion evidence of record." (A.R. 30). *See Molina,* 674 F.3d at 1111–12 (recognizing that a conflict with treatment notes is a germane reason to reject the opinion of a treating physician's assistant).

Even if the ALJ erred in finding that NP Stanford's opinion was not from an acceptable medical source, it is a harmless error. If NP Stanford's opinion should be treated as if from a treating physician, then the ALJ must provide specific and legitimate reasons that are supported by substantial evidence in the record for rejecting it in favor of a contradicting opinion. *See Molina*, 674 F.3d at 1111. In addition to being a "germane" reason, a conflict with treatment notes is a "specific and legitimate" reason to reject a treating physician's opinion. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009). Here, the ALJ correctly stated that NP Stanford's opinion is inconsistent with her own treatment notes. (A.R. 30). The ALJ explained such conflict where he states that:

> [NP Stanford] consistently notes the lack of any remarkable findings on physical examination, but finds his abilities to stand and/or walk very restricted. As well, she appears to attribute [Plaintiff's] inability to sustain work primarily to the 'fragile nature of his emotional status' and inability to focus and concentrate but fails to mention such limitations in her treatment record. *Id*.

Additionally, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (the ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). For example, in *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), the Court held that the ALJ properly discounted one doctor's opinion because it "was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [plaintiff's] medical condition, and was based on [plaintiff's] subjective descriptions of pain." The Court rejected another doctor's opinion because it was also "conclusionary in the form of a checklist" and "lack[ed] substantive medical findings to support her conclusion." *Id*.

The Impairment Questionnaire is in the form of a conclusory checklist. NP Stanford's brief November 9, 2011 letter states that Plaintiff "is unable to work due to his health and the fragile nature of his emotional status. He is on multiple medications that can cause various side effects and make him incapable of focusing and concentrating at the task at hand." (A.R. 282). As noted by the ALJ, the letter fails to cite to objective medical evidence. The Court finds the reasons stated by the ALJ in rejecting NP Stanford's opinion are specific and legitimate and are supported by substantial evidence. The Court therefore finds that even if the ALJ erred by treating NP Stanford as an "other source" opinion, it does not constitute reversible legal error.

### ii. The ALJ Did Not Err in Rejecting Plaintiff's Testimony

When evaluating credibility of a plaintiff's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The plaintiff does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms. Rather, a plaintiff must only show that it could have caused some degree of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If a plaintiff meets the first test, and there is no evidence of malingering, the ALJ can only reject a plaintiff's testimony about the severity of his or her symptoms by offering specific, clear and convincing reasons. *Lingenfelter*, 504 F.3d at 1036. The ALJ cannot rely on general findings. The ALJ must identify specifically what testimony is not credible and what evidence undermines the plaintiff's complaints. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). In weighing a plaintiff's credibility, the ALJ can consider many factors including: a plaintiff's reputation for truthfulness, prior inconsistent statements concerning the symptoms, unexplained or inadequately explained failure to seek treatment, and the plaintiff's daily activities. *Smolen*, 80 F.3d at 1284; *see*

*also* 20 C.F.R. § 404.1529(c)(4) (Social Security must consider whether there are conflicts between a claimant's statements and the rest of the evidence).

Here, Plaintiff argues that the ALJ erred in discrediting Plaintiff's testimony regarding subjective symptoms. The ALJ gave many reasons for finding Plaintiff's testimony not credible. First, the ALJ found that records indicate that Plaintiff has a history of non-compliance with recommended treatment for his diabetes and that when asked about it at the May 8, 2012 hearing, Plaintiff denied feeling any symptomology that would prompt him to do so. (A.R. 29). The ALJ also found that Plaintiff's limited pain treatment records failed to corroborate the severity of Plaintiff's alleged symptoms. (A.R. 29). The ALJ further noted that references in the handful of pain management visits characterize Plaintiff's condition as stable and show little progression in Plaintiff's treatment beyond very conservative methodology. *Id*. Additionally, the ALJ found that examinations, including a CT scan of Plaintiff's brain, did not show any significant abnormalities. *Id*.

The ALJ also identified inconsistencies between Plaintiff's testimony at the hearing and the rest of the record. For example, the ALJ noted that Plaintiff previously stated that he attempts to assist with household chores including cleaning, laundry, and ironing, as well as assisting with meal preparation and weekly grocery shopping. Plaintiff also reported watching television and his children play sports and speaking with his mother daily. The ALJ found that Plaintiff's testimony at hearing suggesting a dramatically reduced functioning was inconsistent and unsupported by any treatment or objective evidence of record. *Id*.

The above reasons provided by the ALJ for discrediting Plaintiff's testimony are specific, clear, convincing, and are supported by substantial evidence in the record. *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989) (evidence regarding claimant's daily activities, his lack of more extensive medical treatment, and his failure to follow prescribed treatment justified ALJ's decision to disbelieve claimant's allegation of excess pain); *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (factors that an ALJ may consider

in weighing a social security disability claimant's credibility include inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment). The Court therefore finds that the ALJ did not err in discrediting Plaintiff's subjective testimony.

### iii. The ALJ Did Not Make Reversible Error in Determining Plaintiff's Past Relevant Work

A claimant is not entitled to an award of benefits if he or she has the residual functional capacity to perform past relevant work. "Past relevant work" is work that a claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1).

Social Security has taken administrative notice of the *Dictionary of Occupational Titles* (the "DOT"), which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs. 20 C.F.R. § 404.1560(b)(2); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230 n.3 (9th Cir. 2009). The DOT can be utilized by an ALJ in determining whether a claimant, given his or her residual functional capacity, can perform his or her past relevant work. *Id.* The DOT indicates the specific vocational preparation ("SVP") for each job title.

SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. (DICTIONARY OF OCCUPATIONAL TITLES, Appendix C II (4th ed. 1991), http://www.occupationalinfo.org/appendxc_1.html#II). An SVP can range between one and nine, with one being the lowest amount of training (i.e., short demonstration) and nine being the highest (over ten years of education or training). *Id.* Specific vocational training includes: (a) vocational education, (b) apprenticeship training, (c) in-plant training, (d) on-the-job training, and (e) "<u>essential experience in other jobs (serving in less responsible jobs which lead to the higher grade job or serving in other jobs which qualify)</u>." *Id.* (emphasis added).

Plaintiff argues that the ALJ erred in finding that Plaintiff's prior work as a project manager constitutes "past relevant work." Plaintiff argues that since Plaintiff only held the position for nine months, it cannot constitute "past relevant work" as project manager has a SVP of eight. A SVP of eight requires training time of over four years. Plaintiff contends that he did not hold the position long enough to have sufficiently learned to do it. SVP, however, does not refer to the length of time a job was held, but the approximate length of training time it takes to learn how to do it. As noted above, essential experience in other jobs may constitute vocational training.

Plaintiff became a project manager after approximately ten years of being a construction superintendent. Although project manager has a higher SVP than construction superintendent, Plaintiff's time working as a construction superintendent may be considered as vocational training in preparation for work as a project manager given the similarities between the two jobs. The DOT states that each job entails directing workers, reviewing plans and status/progress reports, and conferring with personnel regarding a particular project.[8] The ALJ therefore reasonably concluded that Plaintiff could return to work as either a superintendent or project manager.

Even if the ALJ erred in finding that project manager constitutes past relevant work, it is harmless as the ALJ also found that Plaintiff's work as a superintendent, a job he held for almost ten years, constituted past relevant work that Plaintiff could perform. Plaintiff does not dispute the ALJ's determination that Plaintiff's work as a superintendent constitutes past relevant work.

### 3. New Evidence Submitted to Appeals Council Does Not Warrant Reversal or Remand

The Appeals Council must consider additional evidence offered on administrative review of a Social Security disability proceeding if it is (i) new, (ii) material, and (iii)

---

[8] The DOT classification for the position of "superintendent, construction" (DOT # 182.167-026) is available at http://www.occupationalinfo.org/18/182167026.html. The DOT classification for the position of "project manager" (DOT # 189.117-030) is available at http://www.occupationalinfo.org/18/189117030.html.

related to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."). If the evidence qualifies, it becomes a part of the record on judicial review. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012) (holding that new evidence reviewed by the Appeals Council must be treated as part of the administrative record). If the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence. *Taylor*, 659 F.3d at 1233; *see also* 20 C.F.R. § 404.970(b). The Court, however, does not have jurisdiction to review the Appeals Council's decision denying Plaintiff's request for review because it is a non-final agency action. *Taylor*, 659 F.3d at 1231; *see also Klemm v. Astrue,* 543 F.3d 1139, 1144 (9th Cir. 2008) ("The Social Security Act grants to district courts jurisdiction to review only 'final decisions' of the Commissioner.")

Here, the Appeals Council did not consider new evidence offered by Plaintiff on the grounds that it is "about a later time" and does not affect the ALJ's decision. (A.R. 2). The Court will nonetheless consider whether the new evidence warrants a remand under 42 U.S.C. § 405(g), sentence six. Remand for reconsideration under sentence six of 42 U.S.C. § 405(g) is appropriate only where a plaintiff submits new evidence and shows that: (i) the new evidence is material to his disability and (ii) he had good cause for failing to submit the evidence earlier. 42 U.S.C. § 405(g) (sentence six: a court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record"); s*ee also Mayes*, 276 F.3d 453, 462 (9th Cir. 2001).

To be material, the new evidence must bear "directly and substantially on the matter in dispute," and the plaintiff must show a "reasonable possibility" that the new

evidence would have changed the outcome of the administrative hearing. *Booz v. Secretary of Health and Human Serv.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

With regard to the good cause requirement, "[i]f new information surfaces after the [Commissioner's] final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied." *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). However, "[a] claimant does not meet the good cause requirement simply by obtaining a more favorable report from an expert witness once his claim is denied . . . The claimant must establish good cause for not seeking the expert's opinion prior to the denial of his claim." *Clem,* 894 F.2d 328, 332 (9th Cir. 1990) (citing *Key,* 754 F.2d at 1551). The Ninth Circuit has not found good cause where the plaintiff offered no reason why he could not have obtained the evidence earlier. *Key,* 754 F.2d at 1551.

Here, Plaintiff's new evidence is in part redundant of the treatment records already in the Administrative Record and considered by the ALJ. Additionally, the new treatment records only show "mild" narrowing of the central canal and "mild to moderate" foraminal narrowing on Plaintiff's left side. Evidence of mild degenerative changes in Plaintiff's spine is already in the record and was noted by the ALJ in his decision. (A.R. 29). The Court does not find that such records have a reasonable possibility of changing the outcome of the administrative proceedings. Plaintiff has therefore failed to meet his burden of showing that the additional evidence is material to the question of whether he was disabled on or before September 1, 2008.

Further, Plaintiff offers no explanation why the evidence could not have been obtained earlier for use by the ALJ. Plaintiff has therefore failed to meet the good cause requirement under *Key,* 754 F.2d at 1551. Consequently, remand for consideration of the additional treatment records is not appropriate.

### III.  CONCLUSION

Based on the foregoing, the Court concludes that the ALJ's decision is supported by substantial evidence and free from reversible error.  Accordingly, the decision of the Commissioner of Social Security is affirmed.

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner of Social Security.  The Clerk of Court shall enter judgment accordingly.

Dated this 8th day of January, 2015.

_____
Eileen S. Willett
United States Magistrate Judge